George B. Parker, et ux.
vs.
Orrin E. MacCue, Tax Collector of the City of Warwick
Eq. No. 591.

September 29, 1933.

FROST, J. Heard upon bill, answer and proof.

This is a bill of complaint brought to restrain the sale of real estate now belonging to the complainants for taxes assessed on June 15, 1929, against persons who were then the owners of the said real estate.

From the evidence presented it appears that said George B. Parker is the record owner of seven lots or parcels of land situated in the said City of Warwick. All of these parcels were conveyed to him by mortgagee's deeds, each of the three deeds being dated the 14th of June, 1932. Taxes for the years 1930, 1931 and 1932 were paid by said George B. Parker.

Complainants pray that the respondent be enjoined from selling said real estate or any part thereof for the taxes assessed on June 15, 1929, and in support of this prayer they make the following contentions: (a) That the lien for taxes upon this land given by statute had expired; (b) That in each of the notices given by respondent (Exhibits A and B attached to Bill), he threatens to sell the whole of the land rather than enough only to satisfy the tax; (c) That in each of the said notices the respondent threatens to sell complainants' land for taxes levied on other parcels of land as well as on their own; (d) That the notices served upon complainant, George B. Parker, gave notification of a sale on April 1, 1933, while a newspaper advertisement apparently inserted by the respondent gave notice of a sale on April 22, of which latter date no notice had been served upon him; (e) That no notice in compliance with sec-

tion 14, set out below, was served upon Bertha E. Parker, wife of said George B. Parker.

The sections of the statutes involved in a consideration of the questions raised in this bill are 3, 9, 11, 12, 13, 14 and 27 of Chapter 62 of General Laws of Rhode Island 1923, which sections, or the pertinent portions thereof, are as follows:

"Sec. 3. All taxes assessed against the owner of any real estate shall constitute a lien on such real estate in any town, for the space of two years after the assessment, and, if such real estate be not aliened, then until the same is collected."

"Sec. 9. If any person is taxed for several parcels of real estate each of such parcels shall be liable for the payment of the tax assessed against it, even though the same may have been aliened, and no such parcel shall be liable for any tax assessed against any other parcel. * * * "

"Sec. 11. The collector may advertise and sell any real estate liable for taxes in the manner hereinafter directed."

"Sec. 12. In all cases where any parcel of real estate is liable for payment of taxes, so much thereof as is necessary to pay the tax, interest, costs and expenses, shall be sold by the collector, at public auction, to the highest bidder, after notice has been given of the levy, and of the time and place of sale, in some newspaper published in the town, if there be one, and if there be no newspaper published in the town, then in some newspaper published in the county, at least once a week for the space of three weeks, and the collector shall also post up notices in two or more public places in the town for the same period."

"Sec. 13. If the person to whom the estate is taxed be a resident of this state, the collector shall, in addition to the foregoing, cause notice of his levy, and of the time and place of sale, to be left at his last and usual place of abode, or personally serve on him, at least twenty days previous to the sale."

"Sec. 14. In case the collector shall advertise for sale any property, real, personal or mixed, in which any person other than the person to whom the tax is assessed has an interest, he shall, provided the interest of such other person appears upon the records of the town, leave a copy of the notice of such sale at the last and usual place of abode, or personally with such other person, if within this state, twenty days prior to the time of such sale."

"Sec. 27. Any sale of real or personal estate or of any interest therein, liable for the payment of taxes by the provisions of this chapter, may be adjourned from time to time."

Having in mind these sections of the statutes and turning to the first contention of complainants, one is confronted at once with the necessity of determining the initial step required of the collector to be taken where the person taxed does not voluntarily pay. Section 12, above, referring to any parcel of real estate liable for payment of taxes, says, "shall be sold by the collector, * * * after notice has been given of *the* levy and of the time and place of sale, * * * ." In section 13, above, which provides for notice to a resident owner, occurs this language: "the collector shall, * * * cause notice of *his* levy, and of the time and place of sale, * * * ." The contention of the complainants is, substantially, that the words, "the levy", in section 12, refer to the initial levy by the body empowered to levy a tax; that is, the original imposition of the tax, while

the words, "his levy", in section 13, refer to the acts of the collector, to wit: the giving and posting of notices; that the actual giving of notice of the sale is the first step required by statute of the collector in the sale of real estate for taxes, which step in the instant case was not taken within the limitation of time prescribed by statute.

The position of the respondent, on the other hand, is that in both instances, as used in sections 12 and 13, the word "levy" refers to a definite act of the collector preceding the giving of notice of sale, which act in this case was done within the period prescribed by statute.

In actual practice, the tax collectors of the City of Warwick and of its predecessor, the Town of Warwick, in the absence of an interpretation of the statute on the particular point by the Supreme Court, with that desire which characterizes practical men for reducing the abstract to the concrete, have treated the word "levy" as an act to be done by them. From the testimony, it would seem, years ago they considered the "levy" to be a written statement in a book, which they called the "Levy Book," of a mental determination made to sell land on which taxes had not been paid. In the instant case the current Levy Book of the City of Warwick shows a "levy" by the respondent upon land in Warwick, including the lots in question, made on December 30, 1930. It is as follows:

"Town of Warwick.
Town Tax of 1929,
State of Rhode Island
County of Kent

In the Town of Warwick this 30th day of December, Nineteen Hundred Thirty, I have made a levy upon all real estate in said Town of Warwick, upon which taxes and assessments made for the year 1929 are due and unpaid. in order to prepare for the advertisement and sale thereof, in accordance with the provisions of Chapter 62 of the General Laws of Rhode Island, revision of 1923.

December 30, 1930.

Orrin E. MacCue,
Collector of Taxes."

In determining the meaning of a statute much consideration should be given, at least by a trial court, to the practical interpretation of that statute by officials who have been compelled to live and act under it. In the given case, in addition to the weight which the practice of many years gives to the respondent's interpretation of the statute, there is, the Court thinks, much reason for such interpretation. The word "levy" is used in the law with different meanings. It is frequently used for the imposition of a tax by a given body but it is also used to describe the act of an officer in taking possession of property under color of legal process. A careful reading of section 12, in conjunction with the other named sections, seems to indicate that the collector is obliged in selling real estate to do three separate and distinct acts: (a) to reach a determination to sell (which when reduced to written form is the collector's levy); (b) to give notice in a newspaper of the levy and of the time and place of sale; (c) to post notices in two or more public places. If the levy be not an act precedent to the giving of notices but rather a word descriptive of the giving of notice by publication and posting, then it is difficult to understand the enumeration in the words, "cause notice of his levy, and of the time and place of sale, * * * " (section 13, Chap. 62, G. L. of R. I. 1923).

It is unnecessary to consider whether any other act or deed on the part of a collector might constitute his levy. The statute does not define the word. The writing in the Levy Book,

a book kept by the Town Clerk and open to the public, constituted in the opinion of the Court a levy by the respondent, which act on the part of the respondent was a compliance with the statute and was taken while the lien of the statute was valid. Doubtless a levy, as that word was interpreted by the respondent, must be followed reasonably by a sale but there appear in the present case to have been reasons why a sale did not follow more closely after the levy.

While the Court deems itself not bound by the decision of a Federal District Judge, yet the Court in reaching the above conclusion has found of great persuasive force the opinion of Judge Arthur L. Brown in In re *Shawmut Finishing Company* vs. *City of Cranston* (1912, U. S. Dist. Ct. R. I.) 197 Fed. 230, where the Court found, substantially, that a writing in the Levy Book by the Tax Collector of the City of Cranston was a statutory step and kept alive the statutory lien.

Complainants' contentions "b" and "c" may be considered together. Expressed in a few words they are to the effect that the notices (Exhibits A & B attached to Bill) served upon complainant, George B. Parker, embody a threat to sell all of the real estate rather than enough simply to satisfy the taxes and that the threat is made to sell complainants' land to satisfy taxes assessed on other parcels as well as on complainants' parcels. If either or both of these alleged threats were carried out by the respondent, the latter would be acting contrary to the express provisions of sections 9 and 12, as above. It cannot be assumed without basis that there is an intent on the part of the collector to violate the law in the sale of real estate for taxes. A careful reading of the two notices has convinced the Court that the language contained in them is not such as to allow one reasonably to conclude that the collector intended to make a sale contrary to the statutory provisions governing such sale.

Referring to complainants' contention "d", the purport of which is that complainant, George B. Parker, was notified personally of a sale on April 1 and that a sale was advertised in the newspaper for April 22, of which latter date there was no personal service of notice, it may be said that section 27 of the statute noted above, specifically empowers a collector to adjourn a sale from time to time. In this case adjournment was made by the auctioneer on April 1 to April 22 (Transcript pp. 40 & 41, Q & A 49 & 50). The purpose of notices served upon George B. Parker in March was to inform him that land in which he had an interest was to be sold on a specified date. This the notices accomplished. Therefore it was for him to keep himself informed of any adjournments that might be taken.

The final contention "e" of complainants is that Bertha E. Parker, wife of George B. Parker, and as such possessing an inchoate right of dower in the real estate in question, was never served with the statutory notice mentioned in section 14. It is sufficient of this contention to say that it nowhere appears that Bertha E. Parker was of record as a party in interest. So far as appears the fact that Mr. Parker was married was not a part of the records of the City of Warwick of which the collector was bound to take cognizance.

For the foregoing reasons, the bill, in the opinion of the Court, has no merit and must be dismissed.

For complainants: W. Louis Frost.

For respondent: Russell H. Hawkins.